UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DUSTIN JOHN HIGGS,                    )
                                      )
                Petitioner,           )
                                      )
        v.                            )   Cause No. 2:16-cv-00321-JMS-MJD
                                      )
CHARLES DANIELS, Warden,              )
                                      )
                Respondent.           )

**RETURN TO ORDER TO SHOW CAUSE**

For his return to the Order to Show Cause and in response to

Petitioner Dustin John Higgs's petition for a writ of habeas corpus, filed

pursuant to 28 U.S.C. § 2241, the Respondent advises the Court as follows:

**BACKGROUND[1]**

Petitioner Dustin John Higgs is an inmate currently housed at the

United States Penitentiary, located in Terre Haute, Indiana.   Higgs was

convicted by a jury in the District of Maryland of:  three counts of first-degree

premeditated murder, in violation of 18 U.S.C. § 1111(a); three counts of first-

---

[1] The background information is taken in part from the United States Court of Appeals for the Fourth Circuit's opinion affirming Higgs's conviction, *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003).  In addition, throughout this response the United States will make the following references: Dkt. = the docket in this § 2241 case; Crim. Dkt. = the docket in Higgs's criminal case in the District of Maryland (8:98-cr-00520-PJM-2).

degree murder committed in the perpetration or attempted perpetration of a kidnapping, *see id.*; and three counts of kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(2), all of which are punishable by life imprisonment or death. Higgs was also convicted of three counts of using a firearm "during and in relation to [a] crime of violence," in violation of 18 U.S.C.A. § 924(c).

Ultimately, Higgs received nine death sentences under the Federal Death Penalty Act of 1994, *see* 18 U.S.C.A. § 3591-3598 (the "FDPA" or "Act"), one for each murder and kidnapping count, and a consecutive 45-year sentence for the firearm convictions. *See* 18 U.S.C. § 924(c)(1). Higgs's convictions and sentence were affirmed on appeal. *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003), *cert. denied*, 543 U.S. 999 (2004).

### *The Kidnapping and Murder of Tanji Jackson, Tamika Black, and Mishann Chinn*

On the evening of Friday, January 26, 1996, Dustin John Higgs, Willie Mark Haynes, and Victor Gloria drove from Higgs's apartment at 13801 Briarwood Drive in Laurel, Maryland, to Washington, D.C. Arriving in the city in Higgs's blue Mazda MPV van, the men picked up Tanji Jackson, Tamika Black, and Mishann Chinn. Jackson knew Higgs, and they had arranged for Haynes to date Black and for Gloria to date Chinn. After

2

stopping at a liquor store, the couples returned to Higgs's apartment to drink alcohol and listen to music.  The men also smoked marijuana.[2]

Early on January 27, Higgs and Jackson began to argue, prompting Jackson to grab a knife from the kitchen.  Hearing the commotion, Haynes, who had been in a bedroom with Black, broke up the fight, convincing Jackson to surrender the knife.  Jackson, however, remained angry, and the three women left the apartment.  As Jackson exited, "[s]he stopped at the door and said something like I am going to get you all f---ed up or robbed" or made "some kind of threat."  The remark led Higgs to comment that Jackson "do know a lot of n-----s."  Higgs saw Jackson stop and copy the license plate number of his van.  Angered, Higgs commented aloud about Jackson's actions, which Gloria interpreted as concern that Jackson intended some retaliation.

Higgs said, "f---- that," retrieved his coat, and urged the men to come with him. Before leaving the apartment, Higgs took a silver .38 caliber firearm from the end table drawer and put it in his pocket.  With Higgs

---

[2] Following a 1998 arrest on federal drug charges, Gloria agreed to cooperate in the government's murder case against Higgs and Haynes. Gloria's testimony was partially corroborated by Chinn's mother and by a friend of the Jackson family, both of whom saw the victims enter a blue Mazda MPV van. Gloria pleaded guilty to being an accessory after the fact to the murders and received 84 months' incarceration and three years of supervised release.

driving the MPV van, Haynes in the front passenger seat, and Gloria behind Higgs, the men pursued the three women.  Seeing the women walking on the side of the road, Higgs instructed Haynes to get them in the vehicle.  Haynes complied, and the three women got into the back seat of the vehicle, which Higgs drove toward Washington, D.C.

According to Gloria, while en route to Washington, D.C., Higgs and Haynes leaned towards each other and quietly conversed.  Higgs drove past the Baltimore-Washington Parkway into the Patuxent National Wildlife Refuge, a federal property within the jurisdiction of the United States Park Police.  When he pulled over at a secluded location, one of the girls asked if they were trying to "make [them] walk from [t]here?"  Higgs responded, "something like that."  When the women exited the van, Higgs handed his gun to Haynes, who put it behind his back and left the van.  Moments later, Gloria heard a gunshot and wiped the mist off the back window in time to see Haynes shoot one of the women in the chest.  Gloria turned to ask Higgs what he was doing, but saw Higgs holding the steering wheel and watching the shootings in the rearview mirror. Gloria put his head down and listened to more shots and the sound of a woman screaming.

When the shooting ended, Haynes reentered the van and closed the door.  He or Higgs then commented that they had to "get rid of the gun."

4

Higgs drove to the Anacostia River, where he or Haynes threw the gun into the water.  Higgs then drove back to his apartment, which the three men proceeded to sanitize of evidence.  They wiped the patio doors and "everything else, the bathroom, the doorknobs, the stereo," and threw away any items the women might have touched, such as CDs, videotapes, and liquor bottles.  The men left the apartment and dropped the trash by a dumpster.  Higgs and Haynes left Gloria at a fast food restaurant with an admonition to "keep [his] mouth shut."

Around 4:30 a.m., a motorist found the murdered women's bodies strewn about a roadway and contacted the Park Police. Jackson's day planner was found at the scene.  It contained Higgs's nickname and telephone number, as well as a note that read "13801 'MAZDA' 769GRY" — the street number of Higgs's apartment and the tag number for his van.  The police also recovered a .38 caliber wadcutter bullet at the scene.  According to the medical examiner, Jackson and Black each had been shot once in the chest and once in the back.  Chinn had been shot once in the back of the head.

### Higgs's Post-Conviction Motions

Following his unsuccessful direct appeal, Higgs filed a motion for new trial, in the District of Maryland which was rejected.  The Fourth Circuit affirmed.  *United States v. Higgs*, 95 Fed. Appx. 37 (4th Cir. 2004).  Higgs

then filed a motion for relief under 28 U.S.C § 2255, which the trial court denied.  The Fourth Circuit again affirmed. *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011).

Then, in May 2016, Higgs filed an application with the Fourth Circuit to file a second or successive § 2255 motion.  Appeal No. 16-0008 (4th Cir. May 23, 2016).  In the application, Higgs did not challenge his multiple convictions for first-degree premeditated murder and kidnapping. Neither did he challenge his numerous death sentences, each of which has been upheld after numerous challenges stretching over a dozen years.

Instead, Higgs challenged only his firearms convictions (and, by extension, the associated sentences) under 18 U.S.C. § 924(c). Those convictions, in turn, are predicated upon Higgs's convictions (1) for using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tamika Black; (2) for using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Mishann Chinn; and (3) for using a firearm in the commission of a crime of violence, that is either the murder or kidnapping of Tanji Jackson. *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).

Specifically, Higgs argued that that his underlying convictions for first-degree murder and kidnapping failed to categorically qualify as "crimes of

violence" for purposes of § 924(c), following the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Id.* In addition, he argued that both murder and kidnapping fail to categorically qualify as a crime of violence under Section 924(c)'s remaining force clause and as such, the 'crime of violence' element cannot be satisfied here under § 924(c), and the convictions are unconstitutional. *Id.* at 4. The Fourth Circuit rejected those arguments, denying his application last year. *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 27, 2016).

In the instant § 2241 habeas corpus petition Higgs raises the same arguments that he presented to the Fourth Circuit in his application to file a successive § 2255 motion. Dkt. 11, p. 4.

## ISSUE

Whether Higgs's 28 U.S.C. § 2241 habeas corpus petition must be dismissed pursuant to the "gatekeeping" provision of 28 U.S.C. § 2244(a) or whether, pursuant to the "savings clause" provision of 28 U.S.C. § 2255(e), this Court may consider the merits of Higgs's challenge to his conviction.

## DISCUSSION[3]

### I.      Higgs's § 2241 petition must be dismissed pursuant to the "gatekeeping" provision of 28 U.S.C. § 2244(a).

A § 2255 motion is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *Davis v. United States*, 417 U.S. 333, 343 (1974). A prisoner is therefore generally limited to bringing only one motion under § 2255. *Id.*

A prisoner may not file a "second or successive" motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

However, it is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under 28 U.S.C. § 2241. The "savings clause" in 28 U.S.C. § 2255(e) authorizes a federal prisoner to file a §

---

[3] Because "courts should apply the law of the circuit of conviction in reviewing a sentence or conviction under section 2241," the government's analysis will be based predominately on Fourth Circuit law. *Salazar v. Sherrod*, No. 09–cv–619–DRH–DGW, 2012WL 3779075 at *3 (S.D. Ill. Aug. 31, 2012) (unpublished) (citing cases); *Hernandez v. Gilkey*, 242 F.Supp.2d 549, 554 (S.D. Ill. 2001).

2241 petition where the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016); 28 U.S.C. § 2255(e).

In *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015), a death penalty case, the Seventh Circuit made clear that while there is no absolute bar to the use of the § 2255(e) savings clause for *new evidence*, the obstacle in the petitioner's path to earlier relief must have been a "structural problem with section 2255." *Webster*, 784 F.3d at 1125. "In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *Id.* at 1136. The test remains whether § 2255 is an inadequate or ineffective remedy, meaning "whether it allows the petitioner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Id.* (internal quotation marks and citation omitted); *see In re Davenport*, 147 F.3d 605, 609 (7th Cir.1998).

The Seventh Circuit has further explained the scope of *Webster*: "there is nothing in *Webster* to suggest that its holding applies outside the context of new evidence." *Poe*, 834 F.3d at 774. Indeed, as noted in *Poe*, "the *Webster* court took great care to assure that its holding was narrow in scope [stating]– 'it will be the *rare* case where records that *predate* the trial are found much

9

later, despite diligence on the part of the defense, and where those records bear directly on the constitutionality of [the defendant's] sentence.'" *Poe*, 834 F.3d at 774 (quoting *Webster* 784 F.3d at 1140) (first emphasis added).

## A.    Higgs cannot demonstrate that there is a structural problem with § 2255 that prevents him from seeking relief

Because § 2255 was and is adequate to test the legality of Higgs's conviction, this Court lacks jurisdiction to grant the habeas relief he seeks.

Higgs has not been procedurally prevented from raising his claims. In his petition to file a second or successive § 2255 motion, Higgs raised the same *Johnson* claims he presents in the instant petition. Given this prior opportunity to bring this claim and failing to make a *prima facia* showing, the savings clause does not apply to Higgs. He had an unobstructed procedural opportunity. His arguments were reviewed and considered by the Fourth Circuit, which rejected them. *Order*, at 2, *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 27, 2016); *Government's Opposition to Defendant's Application to File Successive § 2255 Motion, United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016). Although not specifically stated, the Fourth Circuit's rejection must be based on a finding that (1) the Supreme Court has not set forth a new rule of constitutional law applicable to 18 U.S.C. § 924(c), and that (2) premeditated first degree murder and/or kidnapping is a "crime

of violence" for purposes of § 924(c).

In short, Higgs fails to demonstrate that his remedy under § 2255 was inadequate or ineffective. His legal theories regarding his *Johnson* claims were reviewed by the Fourth Circuit and he is not entitled to another post-conviction action. *Garza v. Lappin*, 253 F.3d 918, 992 (7th Cir. 2001) ("The mere fact that [the] petition would be barred as a successive petition under § 2255 . . . is not enough to bring the petition under § 2255's savings clause; otherwise, the careful structure Congress has created to avoid repetitive filings would mean little or nothing."); *San–Miguel v. Dove*, 291 F.3d 257, 261 n. 2 (4th Cir. 2002).

This is not a rare case involving a structural problem in § 2255. This is simply a case where Higgs prefers the Seventh Circuit precedent to the Fourth Circuit's view. That is not enough for § 2241 relief.

**B.     Higgs cannot show that § 2255 is inadequate or ineffective**

Background

Higgs was charged and convicted under § 924(c), part of the Gun Control Act of 1968, as amended, of three counts of using and carrying a firearm during and in relation to a crime of violence, that is murder (18 U.S.C. § 1111) and kidnapping (18 U.S.C. § 1201). Section 924(c)(3) defines "crime of violence" as:

11

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(j) provides in pertinent part:

> Any person who, in the course of a violation of subsection (c), causes the death of a person through the use of the firearm, shall—
>
> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life.

Murder and Kidnapping are both qualifying predicate "crimes of violence" and *Johnson* does not change this.

*Johnson* concerns § 924(e), part of the Armed Career Criminals Act ("ACCA"), as amended, which defines "violent felony." Section 924(e)(2)(B) states:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

12

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

Both 924(c) and 924(e) have a "force clause" and a "residual clause." Sections 924(c)(3)(A) and 924(e)(2)(B)(i) are the "force clauses" and §§ 924(c)(B) and 924(e)(2)(B)(ii) are the "residual clauses." *United States v. Roof*, __ F.Supp.3d ___, 2016 WL 8118564 at *14 (D. S.C. Dec. 5, 2016). As seen above, the respective forces clauses are identical regarding force used against persons. While *Johnson* held the § 924(e)(2)(B)(ii) residual clause to be vague—it did not consider the force clause. *Id.* ("Textual differences between the § 924(c) and § 924(e) residual clauses might be 'crucial in determining whether the holding in *Johnson* reaches § 924(c)(3)—a question now pending before the Supreme Court.'") (quoting and citing *United States v. Moreno–Aguilar*, 198 F.Supp.3d 548, 549 (D. Md. 2016)). *See also Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), *cert. granted,* 137 S. Ct. 31 (2016) (No. 15–1498) (granting writ of certiorari on same question regarding identical language in 18 U.S.C. § 16(b)).

In the Fourth Circuit, "if the 'most innocent' conduct proscribed by the predicate statute does not fall within either the force clause or the residual clause, then the offense categorically is not a crime of violence regardless of

whether the facts of a particular case involve violent conduct." *Moreno-Aguilar*, 198 F. Supp. 3d at 551.

In this case, because murder and kidnapping qualify as crimes of violence under § 924(c)'s force clause, *Johnson* is irrelevant and Higgs's conduct is deemed criminal− accordingly, he entitled to no relief under § 2241. *Id. See United States v. Taylor*, 814 F.3d 340, 378 (6th Cir. 2016) (*Johnson* "stressed that its reasoning did not control other statutes that refer to predicate crimes").

Under Fourth Circuit Law, Kidnapping is a Crime of Violence Under § 923(c)(3)(A)[4]

An offense is committed under the kidnapping statute when the defendant "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof" and that action impacts interstate or foreign commerce in any number of enumerated ways. *See* 18 U.S.C. § 1201(a). "To establish a violation of § 1201(a), the government must prove that: (1) the victim was seized, confined, inveigled, decoyed, kidnapped,

---

[4] The arguments presented here were considered by the Fourth Circuit in denying Higgs's application to file a successive § 2255 motion. *Government's Opposition to Defendant's Application to File Successive § 2255 Motion*, at 13, *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).

abducted, or carried away; (2) the victim was held; and (3) federal jurisdiction." *United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) (hereinafter "*Wills I*") (footnote omitted).

While the first prong can be accomplished through deceit rather than force, precedent instructs that the second prong necessarily requires the exercise of violent force or the threat thereof, as contemplated by *Johnson*. The Fourth Circuit has determined that, in the context of this statute, "to hold means to detain, seize, or confine a person in some manner against that person's will." *United States v. Wills*, 346 F.3d 476, 493 (4th Cir. 2003) (hereinafter "*Wills II*"); *see United States v. Blackmon*, 209 F. App'x 321, 325 (4th Cir. Dec. 13, 2006) (unpublished) (acquittal under § 1201(a) only warranted if jury found that defendant mistakenly believed victim *consented* to being "held"); *Higgs*, 353 F.3d at 313 (rejecting challenge to the "holding" element where the evidence supported the conclusion that the kidnapper "was prepared to confine [his inveigled victims] at gunpoint if necessary"). *See also United States v. Boone*, 959 F.2d 1550, 1555 n.5 (11th Cir. 1992) (noting that "inveiglement becomes an unlawful form of kidnapping under the statute when the alleged kidnapper interferes with his victim's actions, exercising control over his victim through the willingness to use forcible action should his deception fail").

15

Further, the Supreme Court has found that "[i]t is this 'involuntariness of seizure and detention which is the very essence of the crime of kidnaping.'" *See United States v. Lentz*, 383 F.3d 191, 200 (4th Cir. 2004) (quoting and citing *Chatwin v. United States*, 326 U.S. 455, 460 (1946)). In order to hold a victim against his or her will, then, the alleged kidnapper must use, attempt to use, or threaten to use force necessary to restrain that individual. In other words, because the federal kidnapping statute requires an "involuntar[y] . . . seizure and detention," *Lentz*, 383 F.3d at 200, and requires that the victim be detained, seized, or confined "against that person's will," *Wills II*, 346 F.3d at 493, the federal kidnapping offense necessarily involves the use, attempted use, or threatened use of force. Kidnapping victims cannot be held against their wills by kidnappers without at least a threatened use of force. The Supreme Court has observed that "a person would 'use . . . physical force against' another when pushing him," *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004), and in the context of discussing batteries, the Court has defined force in terms of what it was "capable of causing" – namely, "physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). Federal kidnapping's requirement of detaining a person against that person's will fits within that understanding of physical force and is a "force strong enough to constitute 'power.'" *Johnson*, 559 U.S. at 142. *Cf. United States v.*

16

*Mechor-Mecono*, 620 F.3d 1180, 1186 (9th Cir. 2010) (placing another in fear of being poisoned necessarily involves threatening to force the poison on the victim). Thus, under Fourth Circuit law, kidnapping appropriately qualifies as a predicate crime of violence under § 924(c)(3)(A).

The Seventh Circuit's recent decision in *United States v. Jenkins*, 849 F.3d 390 (7th Cir. 2017), does not necessarily change this.  In addition to the fact that Fourth Circuit law controls here, *Jenkins* relied on a materially different set of arguments.  *Id.* (finding that "kidnapping is not a crime of violence under the Force Clause" where the government did not argue that § 1201(a) requires the use of force).

<u>Murder is a Crime of Violence Under § 923(c)(3)(A)[5]</u>

In all events, no federal court has held after *Johnson* that murder is not a crime of violence.  Higgs argues that murder does not satisfy § 924(c)(3)(A) because: (1) felony murder does not require the intentional use of violent force because a person could die as a result of an accident or reckless conduct during the course of a felony, and (2) premeditated murder does not categorically require the use of violent force because a person may

---

[5] The arguments presented here were considered by the Fourth Circuit in denying Higgs's application to file a successive § 2255 motion. *Government's Opposition to Defendant's Application to File Successive § 2255 Motion*, at 16, *United States v. Higgs*, No. 16-0008 (4th Cir. Jun. 3, 2016).

intentionally kill another person in ways that do not require violent physical force. Dkt. 11, p. 3.

Higgs's argument that murder can be accomplished without force should be rejected. First, Higgs's narrow view of force would erroneously imply that murder has never been properly classified as a crime of violence under § 924(c)—even without *Johnson*. Section 924(c)(3)(B), like 18 U.S.C. § 16(b), turns on "a substantial risk that *physical force* against the person or property of another may be used in the course of committing the offense." Section 924(e)(2)(B)(ii) of the ACCA, by contrast, applies to "any crime" that "involves conduct that presents a serious potential risk of *physical injury* to another."

Because both prongs of the crime of violence definitions in § 924(c)(3) and § 16 turn on "physical force," Higgs's theory that murder can be accomplished without force, would imply that murder could never be a crime of violence under either statute even before *Johnson*. That is obviously wrong.

More fundamentally, Higgs's theory cannot be reconciled with either Supreme Court precedent or the structure and legislative history of the statute. Courts "must, as usual, 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" *Torres v. Lynch*, 136

18

S. Ct. 1619, 1626 (2016) (quoting *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014)); *Moreno-Aguilar*, 198 F. Supp. 3d at 553.  While interpreting the ACCA's elements clause, the Supreme Court has defined "physical force" as "force capable of causing physical pain or injury to another person." *Johnson,* 559 U.S. at 140.

But the Court did not limit the means of causing injury, and the Court later *rejected* a defendant's argument that "although '[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink.'" *United States v. Castleman*, 134 S. Ct. 1405, 1414-15 (2014) (stating instead that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force" and noting that the force used need not be applied directly to the body of the victim").  *See also Roof*, 2016 WL 8118564 at * 14 (citing *Castleman*− "Any felony having as an element the intentional infliction of bodily injury on another person is a crime of violence under § 924(c).").

More recently, in concluding that arson may involve "physical force" within the meaning of § 16, the Supreme Court concluded that some state arson offenses would fall outside the scope of § 16 not because burning

19

property does not involve "physical force," but because § 16 is limited to physical force against the "property of another." Hence, § 16 "would not reach arson in the many States defining that crime to include the destruction of one's own property." *Torres*, 136 S. Ct. at 1630. And as the dissent in *Torres* noted, the Fourth Circuit has already agreed with the broad reading of "physical force" under § 16. *Id.* at 1637 n.1 (citing *Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007)).

The legislative history of § 924(c) confirms this reading. When the crime of violence standard was added to § 924(c) in 1984, *see, e.g., Bailey v. United States*, 516 U.S. 137, 147-48 (1995), a Senate report explained that § 924(c) would reach offenses such as bank robbery under 18 U.S.C. § 2113(a) and assaulting a federal officer under 18 U.S.C. § 111. "As amended by Part D, Section 924(c) provides for a mandatory, determinate sentence for a person who uses or carries a firearm during and in relation to any federal 'crime of violence,' including offenses such as bank robbery or assault on a federal officer." S. Rep. 98-225, 98th cong., 1st sess., 1984 U.S.S.C.A.N. 3182, 3491 (Aug. 4, 1983). These are offenses that satisfy the elements clause of § 924(c), as confirmed by the legislative history of the ACCA. As the D.C. Circuit has noted, Congress concluded that offenses that have as "an element the use, attempted use or threatened use of physical force against a *person*" would

20

"include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc." *United States v. Mathis*, 963 F.2d 399, 407 (D.C. Cir. 1992) (quoting H.R. Rep. No. 849, 99th Cong., 2d Sess. 3 (1986)).  It is profoundly unpersuasive that *assaulting* a federal officer under § 111 would count as a crime of violence under § 924(c)(3), but that *murder* does not.

Likewise, using the slight force needed to pull the trigger of a gun, causing death, constitutes a use of physical force.  *Castleman*, 134 S. Ct. at 1415 (citing that example).  *Cf. Leocal*, 543 U.S. at 9 (interpreting § 16(a) and concluding that "a person would 'use . . . physical force against' another when pushing him"). Indeed, "[s]pecifying that 'physical force' must rise to the level of bodily injury does not suggest that without the qualification 'physical force' would consist of the merest touch.  It might consist, for example, of only that degree of force necessary to inflict pain—a slap in the face, for example." *Johnson*, 559 U.S. at 143.

Higgs's view would also gut the federal solicitation statute, 18 U.S.C. § 373, which was enacted in 1984 when Congress added the crime of violence standard to § 924(c), and § 373 has *solely* an elements clause. Yet § 373 does cover solicitation to commit murder. *United States v. Cardwell*, 433 F.3d 378 (4th Cir. 2005).

21

Higgs argues that felony-murder liability eliminates murder from § 924(c)(3)(A) and § 373. But that is wrong. Felony-murder law would satisfy § 924(c)(3)(A). *See, e.g., Wooden v. Commonwealth,* 222 Va. 758, 284 S.E.2d 811 (1981). Higgs's arguments also rely on *United States v. Torres-Miguel,* 701 F.3d 165 (4th Cir. 2012), and other cases that (1) do not construe § 924(c), (2) predate Supreme Court cases like *Castleman* and *Torres,* and (3) would result in no federal offense ever satisfying § 924(c)(3)(A). The Fourth Circuit's recent ruling in *United States v. McNeal,* 818 F.3d 141, 152-53 (4th Cir. 2016), holding that bank robbery satisfies § 924(c)(3)(A), would be wrong on Higgs's view because bank robbery can be accomplished by shoving a bank teller to the ground while robbing the bank. But both bank robbery and murder are paradigmatic crimes of violence, as Congress recognized.

As shown, Higgs's multiple convictions for kidnapping and first-degree premeditated murder plainly qualify as predicate "crime[s] of violence" under § 924(c)'s "force clause." At the very least kidnapping and premeditated murder have "as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A).

In addition, even under the residual clause, Higgs's claim would fail. *Moreno-Aguilar,* 198 F. Supp. 3d at 554–58 (distinguishing § 924(c)(3)(B)

22

from ACCA's residual clause and finding that § 924(c)(3)(B) "is not unconstitutionally vague"). *See also, United States v. Hernandez*, No. 2:16-CR-37-NT, 2017 WL 111730 (D. Me. Jan. 11, 2017) (following Second, Sixth, and Eighth Circuits and "[t]he majority of district courts to consider this issue," that § 924(c)'s residual clause is distinct enough from ACCA's residual clause to uphold its constitutionality). *Cf. Beckles v. United States*, No. 15–8544 (U.S. Mar. 6, 2017) (distinguishing *Johnson*− catchall definition of "crime of violence" in the advisory U.S. Sentencing Guidelines can't be void for vagueness under the due process clause).

In short, Higgs's claims have failed up to this point not because of problems with § 2255 but because his claims are meritless.  This Court should reject his attempt to circumvent a broad array of thoughtful decisions dismissing the argument Higgs repeats here.

## CONCLUSION

For all of the foregoing reasons, the Respondent respectfully urges the Court to dismiss Higgs's petition for writ of habeas corpus pursuant to

28 U.S.C. § 2241, with prejudice, for lack of jurisdiction.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By:   s/ James R. Wood
  James R. Wood
  Chief, Appeals Division
  Office of the United States Attorney
  10 W. Market St., Suite 2100
  Indianapolis, Indiana 46204-3048
  Telephone: (317) 226-6333
  E-mail: Bob.Wood@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on March 22, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all ECF-registered counsel of record *via* email generated by the Court's ECF system.

By:    s/ James R. Wood
James R. Wood
Chief, Appeals Division
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Fax: (317) 226-6125
E-mail: Bob.Wood@usdoj.gov