**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

|   |   |   |
|---|---|---|
| DUSTIN JOHN HIGGS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-00321-JMS-MJD |
| | ) | |
| CHARLES DANIELS, | ) | Capital Case |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER'S REPLY TO GOVERNMENT'S
RETURN TO ORDER TO SHOW CAUSE**

Petitioner, through counsel, respectfully submits this reply to the Government's Return to

Order to Show Cause.  Filing No. 16.

Petitioner filed his petition under 28 U.S.C. § 2241 on August 16, 2016.  Filing No. 3.

On September 1, 2016, this Court directed Petitioner to file a brief showing "that his habeas

claim(s) may properly be asserted pursuant to the savings clause of 28 U.S.C. § 2255(e)."  Filing

No. 7 (directing Petitioner to address *Montana v. Cross*, 829 F.3d 775 (7th Cir. 2016)).

On October 27, 2016, Petitioner filed a brief in response to the Court's order, addressing

inter alia *Montana*.  Filing No. 11 (hereinafter "Pet'r's Response").

On December 6, 2006, and February 21, 2017, the Court issued orders to the Government

to answer the allegations of the petition and show cause why the relief sought should not be

granted.  Filing Nos. 12, 13.  Both orders directed that Petitioner would have 30 days in which to

reply to the Government's response.

On March 22, 2017, the Government filed its Return to Order to Show Cause.  Filing No.

16 (hereinafter "Return").  Petitioner obtained several extensions of time in which to file his

reply, in part based on the pendency of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), in the Supreme Court.  On April 17, 2018, the Supreme Court decided *Dimaya*.  Petitioner now files his reply to the Government's Return.

In its Return, the Government makes two arguments: (1) Mr. Higgs cannot file a petition under 28 U.S.C. § 2241 because he supposedly cannot show that a structural problem with 28 U.S.C. § 2255 prevents him from seeking relief; and (2) Mr. Higgs is entitled to no relief because his convictions are for crimes that are covered under the "force" clause of 18 U.S.C. § 924(c). Return 10-23.  The Government's contentions are without merit.

## I.   A STRUCTURAL PROBLEM WITH 28 U.S.C. § 2255 PREVENTS PETITIONER FROM SEEKING RELIEF UNDER THAT STATUTE.

The Government acknowledges that a federal prisoner may seek relief under § 2241 "where the remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.'"  Return 9 (quoting *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016)).  The Government, however, appears to argue that under *Poe* and *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015), a federal prisoner can *only* show that the § 2255 remedy is inadequate if the petitioner's claim is based on new evidence that predates the trial but has only recently become available, i.e., the type of claim raised in *Webster*.  Return 9-10.

The Government's apparent argument is flatly contrary to Seventh Circuit law, including *Montana* (discussed in Pet'r's Response 10-11); *In re Davenport*, 147 F.3d 605 (7th Cir. 1998) (cited in Return 9); and *Salazar v. Sherrod*, No. 09-cv-619-DRH-DGW, 2012 WL 3779075 (S.D. Ill. 2012) (cited in Return 8 n.3).  Those decisions make clear that a petitioner may seek relief under 28 U.S.C. § 2241 based on a change in the law (as opposed to new evidence) if she meets a three part test:

> (1) that he relies on "not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion," (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is "grave enough ... to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding," such as one resulting in "a conviction for a crime of which he was innocent."

*Montana*, 829 F.3d at 783 (quoting *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)) (citing

*Davenport*, 147 F.3d at 611).

Petitioner showed in his Response that he meets this three part test.  Pet'r's Response 10-11.  The Government makes no attempt to defeat that showing.  Nor does *Poe* change the law discussed therein; to the contrary, *Poe* itself quotes a version of the three part test.  *Poe*, 834 F.3d at 773 (quoting *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013)).  The Government's argument about *Webster* and *Poe* is at best a red herring.

The Government also argues that Petitioner did have access to review of the merits under § 2255, because he filed an application for leave to file a second or successive § 2255 motion, which was denied by the Fourth Circuit.  Return 10-11.  The Fourth Circuit's explanation of its denial of that application was limited to the terse statement that "the court denies the motion." *United States v. Higgs*, No. 16-8, Order at 2 (4th Cir. June 27, 2016), Pet'r's Response, Ex.3. The Government nevertheless speculates that the denial of the motion must have been on the merits, rather than on any procedural ground.  Return 10-11.

It is of course impossible to know what the Fourth Circuit actually considered before denying the motion.[1]  Logically, however, the first issue that the Fourth Circuit would have

---

[1] Thus, the Government's assertion that the Fourth Circuit "considered" arguments about the merits that the Government made in the § 2255 proceedings, Return 14 n.4, is inaccurate and misleading.  The Government made such arguments, but there is no basis for the Government's

3

reviewed is whether Petitioner could make the showing required to file a successive motion under § 2255(h).  Furthermore, if the Fourth Circuit had found that Petitioner met that gatekeeping requirement, logically it would authorize the filing of a successive petition and allow the District Court to review the merits, as is required under §§ 2244 and 2255(h), and as both the Fourth and Eleventh Circuits have done after finding that a *Johnson* motion satisfies § 2255(h).  *See* Pet'r's Response 6-7 & Exs. 5-9.  Accordingly, numerous courts have recognized that ruling on an application for leave to file a successive § 2255 motion does *not* involve review of the merits.  *See* Pet'r's Response 6 & n.1 (citing decisions).  The Government makes no attempt to rebut this showing.

Moreover, even if it is assumed, contrary to logic, the statute and precedent, that the Fourth Circuit found that the application satisfied § 2255(h) and then proceeded to deny the motion for § 2255 relief on the merits – rather than authorize filing of the successive motion in the District Court – Mr. Higgs has still been denied equal access to a decision on the merits and to appellate resolution of the issues, given that the Fourth Circuit granted an essentially identical application filed by his co-defendant, Willis Haynes.  *See* Pet'r's Response 4-9 & Ex. 4.  Again, the Government has made no response to this showing.

For the reasons set forth herein and in his Response, Mr. Higgs is entitled to review of his § 2241 petition on the merits.

---

presumption that the Fourth Circuit went beyond gatekeeping questions and "considered" the merits of the application.

## II.   PETITIONER IS ENTITLED TO RELIEF ON THE MERITS.[2]

### A.   The Residual Clause of 18 U.S.C. § 924(c)(3)(B) is Vague.

The Government points out that while *Johnson v. United States*, 135 S. Ct. 2551 (2015), found the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) to be vague, it did not actually find the similar residual clause of 18 U.S.C. § 924(c)(3)(B) to be vague.  Return 13.  Since then, however, the Supreme Court decided *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).  *Dimaya* removes any doubt about the issue.[3]

In *Dimaya*, the Court held that the residual clause of 18 U.S.C. § 16(b) is vague, for the same reasons identified in *Johnson* with respect to § 924(e)(2)(B)(ii).  *Dimaya*, 138 S. Ct. at 1213-16.  As recognized in *Dimaya* and *Cardena*, § 16(b) suffers from the same two flaws.  Like § 924(e)'s residual clause, § 16(b) requires the court to identify a crime's "ordinary case" in order to measure the crime's risk, but "[n]othing in § 16(b) helps courts to perform that task." *Dimaya*, 138 S. Ct. at 1215.  And § 16(b)'s "substantial risk" threshold is no more determinate that § 924(e)'s "serious potential risk" threshold.  *Id.*

Because § 924(c)(3)(B) is identical to § 16(b) – requiring the same categorical ordinary case approach and risk threshold – *Dimaya* dictates that § 924(c)(3)(B) is also unconstitutionally vague.  *In re Hubbard*, 825 F.3d 225, 230 n.3 (4th Cir. 2016) ("[T]he language of § 16(b) is

---

[2] The Government frames § B of its Return as arguing that Petitioner cannot show that § 2255 is inadequate or ineffective.  Return 11.  But the entire argument that follows asserts that Petitioner is not entitled to relief on the merits.  Return 11-23.  Petitioner replies here to the actual arguments forwarded by the Government.

[3] The Government cites district court decisions holding that the governing law for this petition is that from the jurisdiction of conviction.  Return 8 n.3.  In the absence of any apparent controlling authority on this point, Petitioner will cite decisions from both the Fourth and Seventh Circuits where feasible.

5

identical to that in § 924(c)(3)(B), and we have previously treated precedent respecting one as controlling analysis of the other."); *see United States v. Cardena*, 842 F.3d 959, 996 (7th Cir. 2015) (§ 924(c)(3)(B) is vague because it "is the same residual clause contained in [§ 16(b)"]). Immediately after the Supreme Court issued its decision in *Dimaya*, the Tenth Circuit likewise found § 924(c)(3)(B) to be vague. *United States v. Salas*, 889 F.3d 681, 685-86 (2018). This Court should follow *Dimaya*, *Hubbard*, *Cardena* and *Salas* in holding that § 924(c)(3)(B) is vague.[4]

**B.      Kidnapping is not Categorically a Crime of Violence Under § 924(c)(3)(A).**

Mr. Higgs's conviction for kidnapping under 18 U.S.C. § 1201(a) does not fall under § 924(c)(3)(A)'s force clause. In determining whether a statute qualifies as a "crime of violence," courts apply a categorical approach and look to whether the elements of the offense satisfy § 924(c)(3)(A). *Id.* This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense] in determining whether the offense qualifies as a crime of violence." *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). In applying the categorical approach, courts must presume the conviction rested on the least serious acts that could satisfy the statute. *United States v. Armour*, 840 F.3d 904, 908 (7th Cir. 2016). Thus, if the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence." *See United States v. Moreno-Aguilar*, 198 F. Supp. 3d 548, 551 (D. Md. 2016) (cited in Return 13-14).

---

[4] Petitioner notes that the Fourth Circuit has granted rehearing en banc as to whether *Dimaya* effectively holds that § 924(c)(3)(B) is vague. *United States v. Simms*, No. 15-4640, Order (4th Cir. June 15, 2018).

The Government argues that kidnapping categorically qualifies as a crime of violence, Return 15-17, despite the fact that the elements of § 1201(a) are satisfied if "(1) the victim was seized, confined, inveigled, decoyed, kidnapped, abducted or carried away; [and] (2) the victim was held." *United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) (*Wills I*).  In particular, the Government argues that the "holding" element of kidnapping necessarily involves the use of force.  Return 15-16 (citing inter alia *United States v. Wills* 346 F.3d 476, 493 (4th Cir. 2003); *United States v. Lentz*, 383 F.3d 191, 200 (4th Cir. 2004)).

This exact argument, however, has been rejected both by the Seventh Circuit and by a district court in the Fourth Circuit.  In *United States v. Jenkins*, 849 F.3d 390 (7th Cir. 2017), *vacated*, No. 17-97, 2018 WL 2186183 (U.S. May 14, 2018),[5] the court explained that the elements of kidnapping under § 1201(a) do not categorically involve the use of force:

> The Government argues that because the holding must be unlawful, it necessarily requires at a minimum the threat of physical force. This is incorrect. Holding can be accomplished without physical force. For example, a perpetrator could lure his victim into a room and lock the victim inside against his or her will. This would satisfy the holding element of kidnapping under § 1201(a) without using, threatening to use, or attempting to use physical force.

*Jenkins*, 849 F.3d at 393 (citing decisions).[6]

Applying *Jenkins*, the District Court for the Eastern District of Virginia has reached the same conclusion.  *United States v. Autrey*, 263 F. Supp. 3d 582 (E.D. Va. 2017).  There, the court

---

[5] The Court vacated the Seventh Circuit's decision and remanded "for further consideration in light of" *Dimaya*.  2018 WL 2186183 at *1.

[6] The Government attempts to distinguish *Jenkins*, contending that different arguments were used in that case.  Return 17.  In *Jenkins*, however, the Government had argued that while the first element of kidnapping ("unlawfully seizing, confining, inveigling, decoying, kidnapping, or carrying away") does not necessarily require the use of force, the second ("holding") element does require the use of force.  *Jenkins*, 849 F.3d at 393.  We understand the Government to be making precisely the same argument here.  Return 15-16.

noted that a person may be held against his or her will by being locked into a room, or by a "mental restraint" that does not necessarily involve the use of force.  *Id.* at 591-92 (citing *Chatwin v. United States*, 326 U.S. 455 (1946)).  Thus, under *Jenkins* and *Autrey*, kidnapping under § 1201(a) does not satisfy the force clause.

### C.       Murder is not Categorically a Crime of Violence Under § 924(c)(3)(A).

On the question of whether murder categorically constitutes a crime of violence because it necessarily involves the use of violent force, the Government spends the bulk of its Return discussing what it contends are the broader implications of Petitioner's argument and noting that the amount of physical force necessary to satisfy the crime of violence standard in 18 U.S.C. § 924(c) is slight.  *See* Return 17-22.  It spends comparatively little time responding to Mr. Higgs's argument that a person can be convicted of murder under federal law without the use of any force whatsoever.  Because murder can be committed without any force—most obviously under a felony-murder theory of liability—it is not categorically a crime of violence and Petitioner's convictions under § 924(c) should be vacated.

Murder, as defined by 18 U.S.C. § 1111, is "the unlawful killing of a human being with malice aforethought."  As further explained in § 1111, a person is guilty of murder where the killing occurred "in the perpetration of" certain enumerated felonies, including kidnapping. Under such felony-murder liability, the intent element of § 1111 is satisfied simply by proof that the defendant committed the underlying felony.  *See, e.g.*, *United States v. Pearson*, 159 F.3d 480, 485 (10th Cir. 1998) ("[T]o prove the 'malice aforethought' element of felony murder, the prosecution only need show commission of the specified felony[.]"); *United States v. Tham*, 118 F.3d 1501, 1508 (11th Cir. 1997) ("That the killing resulted from commission of an enumerated felony suffices to establish the requisite malice aforethought [in § 1111(a)]."); *United States v.*

*Flores*, 63 F.3d 1342, 1371 (5th Cir. 1995) ("[T]o be guilty of first degree murder, the defendant need only have intended to commit the underlying felony. No other mens rea is required.").

Otherwise stated, all that is required is that the killing "resulted from" the commission of the underlying felony. *Pearson*, 159 F.3d at 485 (upholding felony-murder conviction where handgun accidentally discharged during the course of a robbery); *Tham*, 118 F.3d at 1508 (noting that, at common law, "anytime commission of a felony caused a death, even though unintentional or accidental, the legal malice from the felony sufficed to transform the killing into a felony murder," and that "[s]ection 1111(a) enshrines this common law principle in federal statutory law, but restricts its application to arson and certain other enumerated felonies.").

Because a wholly unintentional killing that simply resulted from the commission of a kidnapping suffices to support a felony-murder conviction, and because, as discussed above, a kidnapping can be achieved without the use of force, it necessarily follows that the crime of felony murder can be committed without the use of force. Indeed, the hypothetical posited by the Seventh Circuit in *Jenkins* need only be slightly changed to transform a forceless crime of kidnapping into a forceless crime of felony murder. Should the hypothetical *Jenkins* victim suffer a fatal heart attack or trip and suffer a fatal head injury as a result of and during the course of the kidnapping-by-deception, the defendant would then be guilty of felony murder. *See, e.g.*, *State v. Reardon*, 486 A.2d 112, 115-18; 119-22 (Maine 1984) (upholding felony-murder conviction where victim died of a heart attack during robbery); *People v. Stamp*, 2 Cal. App. 3d 203, 209-11 (Cal. Ct. App. 1969) (same).

The Government offers virtually nothing to counter Mr. Higgs's argument that felony murder can be accomplished without the use of force. It merely makes the conclusory assertion that "[f]elony-murder law would satisfy § 924(c)(3)(A)," and supports this contention with an

9

unadorned citation to a Virginia Supreme Court case concerning a felony-murder prosecution. Return 22 (citing *Wooden v. Commonwealth*, 284 S.E.2d 811 (1981)).  But nothing in *Wooden* suggests that felony-murder liability under § 1111 (or under Virginia law) necessarily involves the use of force.

The Government describes it as "profoundly unpersuasive" that the crime of assaulting a federal officer under 18 U.S.C. § 111 would necessarily involve the use of force, but the crime of felony murder would not.  Return 20-21; *see also id.* at 20-22 (arguing that bank robbery is necessarily a crime of violence).  But there is nothing illogical about this result.  While the consequences of felony murder are obviously much more severe than the consequences of bank robbery or assault, the fact remains that felony murder can be achieved by trickery or deception, whereas robbery and assault require the use or threatened use of force.

Because the Government does not meaningfully engage with the notion that an entirely forceless felony murder is possible under § 1111, its discussion of *United States v. Castleman*, 134 S. Ct. 1405 (2014), misses the mark.  *See* Return 19.  As the Fourth Circuit has made clear, "an offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of a crime of violence.  Of course, a crime may result in death or serious injury without involving [the] use of physical force."  *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012).  Mr. Higgs acknowledges that it "is well-settled that *Castleman* abrogated a portion of *Torres-Miguel*'s reasoning."  *United States v. Middleton*, 883 F.3d 485, 491 (4th Cir. 2018).  But "*Castleman* did not however abrogate the causation aspect of *Torres-Miguel* that 'a crime may result in death or serious injury without involving the use of physical force.'"  *United States v. Covington*, 880 F.3d 129, 134 n.4 (4th Cir. 2018)

10

(quoting *Torres-Miguel*, 701 F.3d at 168). *Castleman* is simply irrelevant to the forceless felony-murder context.[7]

Because a person can be guilty of murder under § 1111 without the use of any force whatsoever, it is not categorically a crime of violence.[8]

---

[7] Moreover, the force discussed in *Castleman* "differs from the force required in the [Armed Career Criminal Act]: Section 921(a)(33)(A) accepts de minimus force, but the ACCA, by contrast, requires violent force." *Middleton*, 883 F.3d at 490.

[8] The Government's final argument, that Petitioner's § 924(c) convictions are sustainable even under the residual clause, Return 22-23, has been foreclosed by *Dimaya*, as discussed above.

## CONCLUSION

For the foregoing reasons and those stated in his prior filings, Mr. Higgs respectfully

requests that the Court proceed to consider the merits of his petition, vacate his crime of violence

convictions, vacate his sentences of death, and grant such other relief as is proper.

Respectfully submitted,


/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
215-928-0520
Matthew_Lawry@fd.org


Dated:  June 27, 2018

**CERTIFICATE OF SERVICE**

I, Matthew Lawry, hereby certify that on this 27th day of June, 2018, I filed the

foregoing Reply using the Court's CM/ECF program, with electronic service provided to

the following individual:

James R. Wood
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Email: Bob.Wood@usdoj.gov


/s/ Matthew C. Lawry
Matthew C. Lawry