**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| DUSTIN JOHN HIGGS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-00321-JMS-MJD |
| | ) | |
| CHARLES DANIELS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**PETITIONER'S RESPONSIVE SUPPLEMENTAL BRIEF**

On June 26, 2019, this Court lifted a stay of proceedings and directed the parties to file supplemental briefs "addressing how the Supreme Court's decision in [*United States v.*] *Davis* impacts the issues in this action." [Filing No. 31]. On August 9, 2019, the Government filed a supplemental return. [Filing No. 33] (hereafter "Supp. Return").

Among the arguments raised by the Government in the supplemental return was that Petitioner should make a second request to the Fourth Circuit to authorize the filing of a successive motion under 28 U.S.C. § 2255 before making any attempt to avail himself of a habeas petition under 28 U.S.C. § 2241. Supp. Return 9, 14-15. On January 6, 2020, Petitioner filed in the Fourth Circuit an application for leave to file a successive motion under 28 U.S.C. § 2255. On January 8, 2020, after receiving an extension of time, Petitioner notified the Court and opposing

1

counsel of this filing, and asked that proceedings be held in suspense pending the Fourth Circuit's consideration of it. [Filing No. 37]. On February 11, 2020, Petitioner notified the Court and opposing counsel that the Fourth Circuit had denied his application for leave to file a successive motion. [Filing No. 39]. Petitioner now files his responsive supplemental brief regarding *United States v. Davis*, 139 S. Ct. 2319 (2019).

The Government asserts that *Davis* "has no impact on the issues raised in this cause of action." Supp. Return 1. Prior to *Davis* and in *Davis* itself, however, the Government had raised questions as to whether the holding of *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015)—that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), was unduly vague—also applied to convictions under 18 U.S.C. § 924(c). At a minimum, *Davis* resolved all such questions. *See Davis*, 139 S. Ct. at 2336. Moreover, *Davis* confirmed that the "categorical" approach must be used in construing § 924(c). *Id.* at 2327-33. Thus, the questions for this Court now are whether, under *Davis*, Petitioner's § 924(c) convictions are valid, and what effect invalidation of those convictions will have on the sentences for Petitioner's remaining convictions.

Rather than meaningfully address *Davis*, the Government amplifies on arguments made in its initial Return that (1) Mr. Higgs cannot show that a structural problem with 28 U.S.C. § 2255 prevents him from seeking relief

2

thereunder, and (2) Mr. Higgs is entitled to no relief because his convictions are for crimes that are covered under the "force" clause of 18 U.S.C. § 924(c). Supp. Return 5-15. Mr. Higgs responds here to the arguments raised by the Government.

## I.    A STRUCTURAL PROBLEM WITH 28 U.S.C. § 2255 PREVENTS PETITIONER FROM SEEKING RELIEF UNDER THAT STATUTE.

At the outset, it seems obvious that § 2255 has been an ineffective remedy for Petitioner. In 2016, he sought relief in the Fourth Circuit under § 2255. The Fourth Circuit denied his application over a dissent, [Filing No. 11-3], even though it granted a nearly identical application filed by Mr. Higgs's co-defendant. [Filing No. 11-4]. Petitioner again sought relief from the Fourth Circuit under § 2255 in 2019, following the decision in *Davis*, and again was summarily denied. [Filing No. 39-1]. Of course, neither en banc review nor certiorari review is available with respect to the denial of an application for leave to file a successive § 2255 motion. 28 U.S.C. § 2244(e). Thus, there is no remedy for an entirely arbitrary denial of a motion for leave to file a successive § 2255 motion. That appears to be what happened here. On its face, the remedy under § 2255 is inadequate.

The Government acknowledges that a federal prisoner may seek relief under § 2241 "where the remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.'" Supp. Return 5 (quoting *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016)). And the Government acknowledges that the test for whether § 2255 is inadequate or ineffective is supplied by *Montana v. Cross*, 829 F.3d 775,

783 (7th Cir. 2016), which requires the petitioner to show that (1) he relies on a new case of statutory interpretation, (2) that the new rule applies retroactively, and (3) that the error amounts to a miscarriage of justice. Supp. Return 5-6. The Government admits that Petitioner satisfies the second prong of this test, but argues that he does not satisfy the first and third prongs. *Id.* at 6. In that respect, the Government errs.

> **A.**    ***Johnson* and *Davis* Involve Both Statutory Interpretation and Constitutional Law.**

According to the Government, *Johnson* and *Davis* are just decisions about constitutional law, and therefore Petitioner has an adequate remedy under 28 U.S.C. § 2255(h)(2) for any violation of *Johnson* and *Davis*. Supp. Return 6-7. The Government's analysis is unduly simplistic.

In both *Johnson* and *Davis*, statutory interpretation and constitutional analysis are inseparably linked. The precursor to the decision in *Johnson* was the Court's ruling in *Taylor v. United States*, 495 U.S. 575, 600 (1990), that courts must use a categorical approach when deciding whether an offense comes within the residual clause of the ACCA. Using the categorical approach, a court decides whether a crime qualifies as a violent felony under the residual clause "in terms of how the law defines an offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 143 (2008).

4

Applying the categorical approach, both the Supreme Court and lower federal courts had great difficulty deciding which crimes qualified as violent felonies under the residual clause. *Johnson*, 135 S. Ct. at 2557-60. This drove the Court's eventual decision that the residual clause was vague: "Nine years' experience trying to derive meaning from the residual clause convinces us that we have embarked on a failed enterprise." *Id.* at 2560. It quickly became apparent that the vagueness flaw in ACCA's residual clause was shared by similar clauses in other statutes, including 18 U.S.C. § 16, *see Sessions v. Dimaya*, 138 S. Ct. 1204, 1213-16 (2018), and § 924(c), *see Davis*, 139 S. Ct. at 2326-27.

In *Davis*, the Government made no attempt to argue that there was anything about § 924(c)'s residual clause that saved it from the vagueness flaw, assuming that the categorical approach applied when construing § 924(c). Instead, the Government asked the Court to abandon the categorical approach and apply a "case-specific approach" in deciding whether particular crimes come under the residual clause. *Davis*, 139 S. Ct. at 2327. "So, while the consequences in this case may be of constitutional dimension, the real question before us turns out to be one of pure statutory interpretation." *Id.* The Court then addressed that question of "pure statutory interpretation" throughout the remainder of the opinion, before deciding to adhere to the categorical approach and reject the "case-specific approach." *Id.* at 2327-36.

5

Thus, while Petitioner does not dispute that there is a constitutional aspect to *Davis*, it is also a "statutory-interpretation case," and thus comes within the first prong of *Montana*. *See Montana*, 829 F.3d at 783. Petitioner acknowledges that some courts of appeal have found that *Davis* applies retroactively as a new decision of substantive constitutional law. *See, e.g.*, *In re Mullins*, 942 F.3d 975, 978-79 (10th Cir. 2019); *United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019); *United States v. Bowen*, 936 F.3d 1091, 1101 (10th Cir. 2019); *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019). And some courts have held or assumed that for that reason, relief would be available under 28 U.S.C. § 2255. *See, e.g.*, *Ponder v. United States*, No. 19-6759, 2020 WL 488958, *2 (4th Cir. Jan. 30, 2020) (affirming denial of § 2241 petition based on assumption Eleventh Circuit would allow § 2255 review under *Hammoud*).[1]

---

[1] The Government confusingly cites *Hendrickson v. Kizziah*, No. 6:18-cv-316-GFVT, 2019 WL 2271123, *4 (E.D. Ky. June 12, 2019). Supp. Return 7. *Hendrickson* rejected a § 2241 claim brought under *Johnson* and *Dimaya*. *Id.* at *3. Thus, it did not address a claim under *Davis*. Given that *Hendrickson* was issued after Petitioner's last pleading, Petitioner has never used the language the Government quotes from *Hendrickson*, Supp. Return 7, even though the Government introduces the quotation with "[Higgs] says that," *id.* Further confusing matters are that (a) the quoted language was from an argument made by the petitioner in *Hendrickson*, (b) the district court rejected that argument, but (c) if the district court had agreed with the argument it would have allowed the § 2241 petition to go forward, *Hendrickson*, 2019 WL 2271123, *4, even though the Government asserts the contrary. Supp. Return 7.

None of those decisions dealt with a § 2241 petition under *Davis* that followed a circuit court's unexplained rejection of a successive § 2255 petition under *Davis*. Indeed, *Ponder* relied on the assumption—unfounded where Mr. Higgs was concerned—that a successive § 2255 petition would properly get merits review.

The Government relied heavily on the fact that at that time Petitioner had not sought § 2255 relief following *Davis*. Supp. Return 8-9. Now that Petitioner has sought such relief but been summarily denied, the issue is before this Court once again. As Mr. Higgs previously argued, the Fourth Circuit's treatment of his two successive § 2255 petitions shows that a structural problem with § 2255 has prevented him from seeking relief under that statute. [Filing No. 29] (hereafter "Pet'r's Reply") at 2-4; [Filing No. 11] at 4-12. This Court should therefore review the merits under § 2241.

### B.      Petitioner Shows a Miscarriage of Justice.

On the merits, Mr. Higgs's § 924(c) convictions can only survive if they are proper under the "force" or "elements" clause, 18 U.S.C. § 924(c)(3)(A). The Government acknowledges that kidnapping does not qualify under the force or elements clause. Supp. Return 11. Nevertheless, it argues (1) that murder does qualify, (2) that including the invalid kidnapping charge was harmless, and (3) in passing, that the invalidity of the firearms convictions would not affect Mr.

Higgs's other convictions and sentences. For the reasons that follow, the Government errs.

### 1. The categorical approach applies to the § 924(c) force clause.

As the Fourth Circuit held in *United States v. Fuertes,* 805 F.3d 485, 498 (4th Cir. 2015), to determine whether an offense qualifies as a "crime of violence" under the § 924(c) force clause, the district court must "employ the categorical approach or the modified categorical approach." *Id.* (internal quotation marks omitted). The statutory text of the § 924(c) force clause alone demands this categorical framework. Indeed, as the Fourth Circuit reinforced in *United States v. Simms*, 914 F.3d 229, 233, 239, 241 (4th Cir. 2019) (en banc), and the Supreme Court confirmed in *Davis,* 139 S. Ct. at 2328, the words "offense" and "elements" in § 924(c)(3)(A) mandate the categorical framework. Under this approach, courts can only "look to whether the statutory elements of the offense [of conviction] necessarily require the use, attempted use, or threatened use of physical force." *Simms*, 914 F.3d at 233. "This approach is 'categorical' because the courts consider only the crime as defined, not the particular facts in the case." *Id.*

For the limited purpose of "help[ing] to implement the categorical approach," in a "narrow range of cases," a federal sentencing court may look at a short list of judicial documents (authorized by *Shepard v. United States,* 544 U.S. 13, 26 (2005)) to determine whether the defendant was "necessarily" convicted of

8

an offense that qualifies as a "crime of violence." *Descamps v. United States*, 570

U.S. at 261, 262. This approach, known as the modified categorical approach, is

also driven by the elements.

In *Descamps,* the Supreme Court clarified that a federal court may apply the

modified categorical approach only if the relevant crime at issue is divisible. *Id.* at

260. An offense is divisible if it has alternative elements, and thus creates multiple

crimes, some of which constitute a "crime of violence" and some of which do not.

*Id.* at 260-61. If a statute is divisible, a federal sentencing court may review

*Shepard* documents only to determine "which of the statute's alternative elements"

necessarily formed the basis of the defendant's conviction. *Id.* at 262.[2] In this way,

the modified categorical approach "acts not as an exception [to the categorical

approach] but instead as a tool. It retains the categorical approach's central feature:

a focus on the elements rather than the facts, of a crime." *Id.* at 263.

Furthermore, under the modified categorical approach, a court cannot

lawfully make a "crime of violence" finding unless the *Shepard* documents

establish with "certainty" that the defendant was "necessarily" convicted of

---

[2] These documents are the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant, a judge's factual findings in a bench trial, jury instructions, and comparable judicial records. *Shepard*, 544 U.S. at 13, 20, 26.

elements constituting a "crime of violence." *Shepard*, 544 U.S. at 21-22, 23.

"[P]lausibility or even likelihood" that the defendant was convicted of elements

constituting a "crime of violence" will not suffice. *United States v. Clay*, 627 F.3d

959, 967 (4th Cir. 2010). This "demand for certainty" avoids "evidentiary inquiries

into the factual basis for the conviction" that the categorical framework forbids.

*Shepard*, 544 U.S. at 21, 22. This stringent standard comports with "[t]he point of

the categorical inquiry," which "is not to determine whether the defendant's

conduct *could* support a conviction for a crime of violence, but to determine

whether the defendant was *in fact convicted* of a crime that qualifies as a crime of

violence." *Fuertes*, 805 F.3d at 498 (citation omitted).

Applying this demand for certainty, when the *Shepard* documents do not

establish the elements of which a defendant was "necessarily" convicted, the court

must assume that the defendant was convicted of the "least serious" of the

disjunctive elements of the statute. *United States v. Chapman,* 666 F.3d 220, 227

(4th Cir. 2012) (en banc). This is true even when a count in the indictment alleges

the alternative elements in the conjunctive. As the Fourth Circuit held in *United*

*States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (en banc), and again in

*Chapman*, 666 F.3d at 228, the mere fact that a count in an indictment charges

alternative elements of a statute in the conjunctive (for example, a § 924(c) count

which alleges both kidnapping and murder as § 924(c) predicates) does not mean

10

that the defendant was necessarily convicted of both sets of elements. "Indictments often allege conjunctive elements that are disjunctive in the corresponding statute, and this does not require either that the government prove all of the statutorily disjunctive elements or that a defendant admit to all of them when pleading guilty." *Vann*, 660 F.3d at 774 (quoting *Omari v. Gonzales,* 419 F.3d 303, 308 n.10 (5th Cir. 2005)).

Therefore, "when a defendant pleads guilty to a formal charge in the indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct," unless *Shepard* documents conclusively establish otherwise. *Chapman,* 666 F.3d at 227-28.  This same rule applies to jury trials. As the en banc Fourth Circuit clarified in *Vann,* similar to guilty pleas*,* "in trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced—in the absence of a special verdict form identifying the factual bases for conviction—to a term of imprisonment exceeding the statutory maximum for the 'least-punished' of the disjunctive statutory conduct." 660 F.3d at 774.[3]

---

[3] *See id.* at 775 ("if Vann had gone to trial in the underlying cases, any resulting conviction could only be used as an ACCA predicate conviction if the jury had returned a special verdict (or answered an interrogatory) specifically finding him guilty of violating subsection (a)(2) of the Statute.").

If the least serious of the disjunctive elements is broader than the § 924(c) "crime of violence" definition, then the offense categorically fails to constitute a "crime of violence" and cannot support a § 924(c) conviction.

### 2. The § 924(c) force clause includes only offenses that require an intentional and knowing act of violent physical force.

Before addressing the elements of kidnapping and murder, it is important to set forth the parameters of the § 924(c) force clause. Specifically, the force clause only includes offenses that require (1) an intentional and knowing act (2) of violent physical force (3) against the person or property of another.

### a. The force clause requires violent physical force.

As dictated by *Johnson v. United States,* 559 U.S. 133, 140 (2010), the word "physical force" in the § 924(c) force clause requires the use of "violent force," which necessarily "connotes a substantial degree of force." *Id.* at 140. In other words, violent force is "strong physical force . . . capable of causing physical pain or injury to another person." *Id.*[4]

In so holding, the Supreme Court in *Johnson* indicated that de minimis force (such as the squeeze of an arm that causes a bruise) is not violent physical force.

---

[4] In *Johnson*, at issue was the force clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i). Nonetheless, as the Fourth Circuit has held, *Johnson*'s "violent force" requirement applies equally to the materially indistinguishable § 924(c) force clause at issue here. *See United States v. Evans,* 848 F.3d 242, 245 (4th Cir. 2017); *United States v. McNeal,* 818 F.3d 141, 154 (4th Cir. 2016).

*Id*. (citing with approval *Flores v. Ashcroft*, 350 F.3d 666, 670 (7th Cir. 2003)). In

its subsequent decision in *United States v. Castleman*, 572 U.S. 157, 165 (2014),

the Supreme Court again relied on *Flores* to explain that an offense which

criminalizes "a squeeze of an arm [that] causes a bruise" is non-violent force that

falls outside of the force clause. *Id.* (quoting *Flores*, 350 F.3d at 670).

> **b.**     **The force clause requires both a knowing and intentional mens rea.**

The § 924(c) force clause requires the *intentional* use of force. Therefore, an

offense that can be committed by reckless or negligent use of force is not a

qualifying offense under the force clause.[5]

In *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2014), the Supreme Court held that the

force clause of 18 U.S.C. § 16(a)—which is identical to the § 924(c) force clause—

requires "a higher mens rea than . . . merely accidental or negligent conduct."

The Fourth Circuit has confirmed and expanded that holding since then,

repeatedly explaining that the force clause requires the intentional use of force—a

higher degree of mens rea than recklessness or negligence. *See United States v.*

---

[5] The Supreme Court very recently granted certiorari review to determine whether a crime whose elements can be satisfied by showing a mental state of recklessness qualifies as a crime of violence under the force clause. *Borden v. United States*, No. 19-5410, 2020 WL 981806 (U.S. March 2, 2020). While this petition does not involve that precise question, it is likely that the Court's analysis will provide guidance on the issues presented herein. Petitioner is separately filing a motion to hold proceedings in abeyance pending a decision in *Borden*.

13

*Simmons,* 917 F.3d 312, 321 (4th Cir. 2019) (North Carolina conviction for assault with deadly weapon on government official was not a qualifying offense under force clause because it could be violated by "culpable negligence"); *United States v. Middleton*, 883 F.3d 485, 497 (4th Cir. 2018) (Floyd, J., concurring, joined by Harris, J.) (ACCA force clause requires a higher degree of mens rea than recklessness; therefore South Carolina involuntary manslaughter statute was not qualifying offense under force clause); *United States v. Townsend*, 886 F.3d 441, 444-45 (4th Cir. 2018) ("'[u]se' of force means to act with a mens rea more culpable than negligence or recklessness"); *United States v. Smith*, 882 F.3d 460, 464 (4th Cir. 2018) (a crime of violence requires "a higher mens rea than merely accidental or negligent conduct") (quotation marks and citation omitted); *United States v. McNeal*, 818 F.3d 141, 155 (4th Cir. 2016) (recklessness not enough to qualify under the § 924(c) force clause); *United States v. Vinson*, 805 F.3d 120, 125 (4th Cir. 2015) (negligent or reckless conduct does not constitute a "use" of physical force); *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006) ("[R]ecklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence'''" under the force clause); *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 444-47 (4th Cir. 2005) (same); *see also United States v. Vederoff,* 914 F.3d 1238, 1248 (9th Cir. 2019) (Washington second degree murder

14

is not a qualifying offense under the force clause because it can be committed by a "negligent or even accidental felony murder").

Finally, as the Fourth Circuit held in *Middleton*, 883 F.3d at 492, an offense which can be committed without *knowingly* causing violent physical force is not a qualifying offense under the force clause. Specifically, in *Middleton*, the court found that a South Carolina manslaughter statute did not constitute an ACCA violent felony under the force clause because the offense can be committed by a defendant who merely sells alcohol to another, who in turn, shares the alcohol with a driver, who becomes drunk and crashes the car causing bodily injury to another. *Id.* Under such an expansive offense with attenuated causation, one can be convicted without "employing [alcohol] *knowingly* as a device to cause physical harm." *Id.* The court explained that the "force clause is written too narrowly to encompass such a broad range of criminal behavior" that can be committed by unknowingly causing physical harm through an attenuated chain of causation. *Id.*

### 3. Federal murder is not categorically a crime of violence under § 924(c)(3)(A).

In Pet'r's Reply 8-11, he showed that a person may be convicted of felony murder under 18 U.S.C. § 1111 without the use of force, and therefore that § 1111 does not categorically qualify as a crime of violence. For example, if a person commits a kidnapping by means of deceit or trickery, and the victim dies as the result of accidental or reckless conduct during the course of the kidnapping, the

defendant could be convicted of felony first degree murder even though the defendant did not intentionally use violent force. Indeed, for felony murder under § 1111(a), the intent element is satisfied by proving the predicate felony or felonies. *See United States v. Williams*, 4 F. Supp. 3d 1235, 1238 (D. Haw. 2014).

In *Leocal*, the Court held that the force clause of 18 U.S.C. § 16(a)—which is identical to the § 924(c) force clause—requires a "higher mens rea than . . . merely accidental or negligent conduct." 543 U.S. at 1. An offense that, like § 1111(a), includes reckless or negligent felony murder, is therefore not categorically a crime of violence. *See Vederoff*, 914 F.3d at 1248 (Washington second degree murder statute that included felony murder was not categorically a crime of violence).

The Government largely ignores Petitioner's showing, preferring to rely on a rehash of its prior arguments. Mr. Higgs responds in any detail only to new arguments.

The Government says that killing someone with a firearm clearly involves the use of force. Supp. Return 12. Section 1111, however, is not limited to killings committed with a firearm. Rather, it includes a wide variety of types of murder, including felony murder. The Government's response is irrelevant to the required categorical approach to the statute.

16

The Government makes an argument based on *Castleman*. Supp. Return 12-13. Petitioner has already shown that *Castleman* is inapposite, Pet'r's Reply 10-11, and the Government makes no attempt to rebut that showing.

The Government cites several decisions holding, in various contexts, that murder qualifies as a crime of violence. Supp. Return 13-14. The majority of those decisions are from other district courts and are of little persuasive value, as they do not even discuss the issue whether felony murder qualifies as a crime of violence. The one court of appeals decision cited by the Government—*Thompson v. United States*, 924 F.3d 1153, 1158-59 (11th Cir. 2019), *cert. pending*, No. 19-7217 (U.S.)—contains only perfunctory analysis. According to *Thompson*, murder under § 1111 is categorically a crime of violence in part because it has as an element malice aforethought. *Id.* at 1158. But this ignores Petitioner's showing here that under § 1111, malice aforethought can be established by showing that death resulted from commission of a felony, including felonies like kidnapping that the Government concedes are not categorically violent. *See* Pet'r's Return 8-9. Similarly, *United States v. Lobo-Lopez*, 206 F. Supp. 3d 1084, 1096 (E.D. Va. 2016), concluded that felony murder is categorically a crime of violence on the ground that murder requires some amount of force, *id.* at 1097, without addressing the fact that felony murder does not require the *intentional* use of force.

Because murder is not categorically a crime of violence, Petitioner's convictions under § 924(c) are miscarriages of justice.

> **4.      Kidnapping is not categorically a crime of violence under § 924(c)(3)(A), and reliance on the invalid predicate offense was improper, even if murder qualifies as a crime of violence.**

As noted above, the Government now concedes that kidnapping is not a crime of violence under the force clause. Supp. Return 14-15. Without analysis, the Government contends that the firearm convictions "remain valid" based on its contention that murder qualifies as a crime of violence. *Id.* at 15. But even if the Government were correct that murder qualifies (it does not), the invalid kidnapping predicate renders the firearm convictions invalid.

Even assuming arguendo that murder is considered a crime of violence (though it should not be), under the categorical approach, the Court must assume that kidnapping was the predicate offense.

Applying the categorical approach here, the Court must first determine the alleged "crime of violence" upon which Mr. Higgs's § 924(c) convictions (Counts Five, Ten and Fifteen) were predicated. The alleged crimes of violence in those counts were murder and kidnapping. *See United States v. Higgs*, Crim. No. PJM-98-520, Second Superseding Indictment (D. Md. Aug. 31, 2000) (attached as Ex. A) (hereafter "2d Indictment"). Because the indictment alleged alternative predicate crimes, this Court must apply the modified categorical approach and

18

review the available *Shepard* documents to determine which of the multiple crimes

necessarily served as the basis for the § 924(c) convictions.

The available *Shepard* documents here—the indictment, the jury

instructions, and the verdict form—fail to conclusively establish the basis for the §

924(c) conviction. Although the indictment alleged both kidnapping and murder

(in the conjunctive) as the "crime of violence" under § 924(c), the verdict form

directed that the jury could find guilt on either kidnapping *or* murder:

> Is the defendant, Dustin John Higgs, guilty or not guilty of using a firearm in the commission of a crime of violence, that is either the murder *or* the kidnapping of Tamika Black?
>
> Guilty _____        Not Guilty _____

*United States v. Higgs*, Crim. No. PJM-98-0520, Verdict Form (emphasis added)

(attached as Ex. B).[6]

The jury found guilt under these terms without specifying whether

kidnapping or murder was the basis for the § 924(c) conviction. *Id.* at 1.

Moreover, the jury instructions on the § 924(c) count authorized such an

ambiguous verdict because they stated that both kidnapping and murder were

"crimes of violence," but never required the jury to select one versus the other or

even unanimously find one versus the other as the § 924(c) predicate:

---

[6] The same wording was used in the instructions for the firearms offenses charged in relation to the other victims.

19

> The first element the government has to prove beyond a reasonable doubt is, again, the defendant committed or counseled, commanded, induced, procured or willfully caused another to commit a crime of violence for which he might be prosecuted in a court of the United States.
>
> The defendant is charged in the indictment with the crime of murder. He is also charged in the indictment with the crime of kidnapping. I instruct you that each of these crimes are crimes of violence. However, it is for you to determine whether the government has proved beyond a reasonable doubt that the defendant committed or counseled, commanded, induced, procured or willfully caused another to commit the crimes of violence charged.

*United States v. Higgs,* Crim. No. PJM-98-0520, Trial Tr. vol. 18, 79-80, Oct. 10, 2000 (attached as Ex. C).

Therefore, it is possible that six jurors predicated § 924(c) guilt on kidnapping while six jurors predicated § 924(c) guilt on murder. Or it could be that all twelve jurors found § 924(c) guilt on kidnapping. We just do not know.

Due to this grave ambiguity, the general verdict form and jury instructions fail to meet *Shepard*'s "demand for certainty." 544 U.S. at 22. Therefore, as *Vann* and *Chapman* direct, the Court must assume that Mr. Higgs's § 924(c) conviction was predicated on the least serious of the two offenses, i.e. kidnapping. Because kidnapping categorically fails to qualify as a § 924(c) "crime of violence," the § 924(c) convictions are void.

The second superseding indictment charged that Mr. Higgs "did knowingly use and carry a firearm during and in relation to a crime of violence . . ., that is,

20

murder and kidnapping." 2d Indictment. He was convicted by a jury. In these circumstances, there is no way of knowing whether the jury convicted him of the kidnapping predicate or the murder predicate. That invalidates the firearms convictions. *See In re Gomez*, 830 F.3d 1225, 1228 (11th Cir. 2016) (convictions invalid where indictment charged several predicate offenses, one of which "may not 'categorically' qualify as a crime of violence for purposes of § 924(c)'s elements clause").

### 5.    Because the firearms convictions are invalid, Mr. Higgs should be resentenced on all of his convictions.

Finally, the Government asserts that even invalid firearms convictions would "have no measurable impact on Higgs's sentences." Supp. Return 15.

Mr. Higgs's three § 924(c) convictions never should have been before the jury in the first instance since, under *Davis*, those convictions are unconstitutional. Where, as here, a defendant has been sentenced to death after receiving multiple convictions, several of which are subsequently invalidated, the "real question," the Supreme Court has said, is "whether the sentence [on valid convictions] might have been different" if the jury had known that the other "convictions had been unconstitutionally obtained." *United States v. Tucker,* 404 U.S. 443, 448 (1972).

Relying upon *Tucker,* courts have held that a defendant must be resentenced on any valid convictions "unless it can be ascertained from the record that a [jury's] sentence on a valid conviction was not affected" by invalid convictions.

*Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986); *see also Jerkins v. United States,* 530 F.2d 1203, 1204 (5th Cir. 1976) (same); *James v. United States,* 476 F.2d 936 (8th Cir. 1973) (same).

That bar is heightened where, as here, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment[.]'" *Johnson v. Mississippi,* 486 U.S. 578, 584 (1988) (citations omitted). That is because "[t]he decision to exercise the power of the State to execute a defendant is unlike any other decisions citizens and public officials are called upon to make." *Mills v. Maryland,* 486 U.S. 367, 383-84 (1988). And the Supreme Court has made clear that "[t]he *possibility* that [a defendant's] jury conducted its task improperly certainly is great enough to require resentencing." *Id.* at 384 (emphasis added).

Here, it cannot be ascertained from the record that the jury's death verdicts were "not affected" by the unconstitutional § 924(c) convictions. *Whitley,* 784 F.2d at 721. The record fails to eliminate, as it must, the "possibility" that the "jury conducted its task improperly." *Mills,* 486 U.S. at 383. It is more than possible that the cumulative weight of three § 924(c) convictions—none of which actually constituted a crime and therefore should not have ever been before the jury— affected the jury's decision to impose a sentence of death.

In light of the Eighth Amendment's heightened requirement of reliability in capital sentencing and because the "possibility" exists that the jury improperly relied upon the unconstitutional § 924(c) convictions in sentencing him to death, Mr. Higgs should be granted habeas relief from the § 924(c) convictions, habeas relief as to his death sentences on the remaining counts, and then resentenced.

## CONCLUSION

For the foregoing reasons and those stated in his prior submissions, Mr. Higgs respectfully requests that the Court proceed to consider the merits of his petition, vacate his crime of violence convictions, vacate his sentences of death, and grant such other relief as is proper.

Respectfully submitted,


/s/ Matthew C. Lawry
Matthew C. Lawry
Federal Community Defender Office
 for the Eastern District of Pennsylvania
Curtis Center, Suite 545-West
601 Walnut Street
Philadelphia, PA 19106
215-928-0520
Matthew_Lawry@fd.org


Dated: March 23, 2020

23

**CERTIFICATE OF SERVICE**

I, Matthew Lawry, hereby certify that on this 23d day of March 2020, I filed

the foregoing brief using the Court's CM/ECF program, with electronic service

provided to the following individual:

Brian Reitz
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Email: Brian.Reitz@usdoj.gov

/s/ Matthew C. Lawry
Matthew C. Lawry