# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

March 5, 2021

To: Roger A. G. Sharpe
UNITED STATES DISTRICT COURT
Southern District of Indiana
104 U.S. Courthouse
Terre Haute , IN 47807

| | |
|---|---|
| No. 20-2129 | DUSTIN J. HIGGS,<br>Petitioner - Appellant<br><br>v.<br><br>T. J. WATSON, Warden,<br>Respondent - Appellee |

| Originating Case Information: |
|---|
| District Court No: 2:16-cv-00321-JMS-MJD<br>Southern District of Indiana, Terre Haute Division<br>District Judge Jane Magnus-Stinson |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:          No record to be returned

NOTE TO COUNSEL:

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

Date:                                              Received by:

_____3/5/2021_____                    ____Laura Townsend_____

                                               Deputy Clerk, U.S. District Court


form name: c7_Mandate(form ID: 135)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



| | |
|---|---|
| Everett McKinley Dirksen United States Courthouse<br>Room 2722 - 219 S. Dearborn Street<br>Chicago, Illinois 60604 | Office of the Clerk<br>Phone: (312) 435-5850<br>www.ca7.uscourts.gov |

**FINAL JUDGMENT**

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

January 11, 2021

Before:     DIANE P. WOOD, Circuit Judge
            MICHAEL B. BRENNAN, Circuit Judge
            MICHAEL Y. SCUDDER, Circuit Judge

| | |
|---|---|
| No. 20-2129 | DUSTIN JOHN HIGGS,<br>Petitioner - Appellant<br><br>v.<br><br>T. J. WATSON, Warden,<br>Respondent - Appellee |

| **Originating Case Information:** |
|---|
| District Court No: 2:16-cv-00321-JMS-MJD<br>Southern District of Indiana, Terre Haute Division<br>District Judge Jane Magnus-Stinson |

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

In the

# United States Court of Appeals
## For the Seventh Circuit



CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

---

No. 20-2129

DUSTIN JOHN HIGGS,

*Petitioner-Appellant*,

*v.*

T. J. WATSON, Warden,

*Respondent-Appellee*.

---

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:16-cv-321 — **Jane Magnus-Stinson**, *Chief Judge*.

---

ARGUED JANUARY 5, 2021 — DECIDED JANUARY 11, 2021

---

Before WOOD, BRENNAN, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. In 1996 Dustin Higgs participated in the kidnapping and murder of three young women on federal property in Maryland. Federal charges followed. A jury returned guilty verdicts across the board, and Higgs received nine death sentences. The district court also imposed a 45-year consecutive sentence for Higgs's use of a firearm during the crimes, in violation of 18 U.S.C. § 924(c). Housed in the U.S. Penitentiary in Terre Haute, Indiana, Higgs filed a

2                                                    No. 20-2129

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Southern District of Indiana seeking to invalidate his § 924(c) convictions based on the Supreme Court's 2019 decision in *United States v. Davis*.

Rather than reaching the merits of this claim, the district court dismissed the petition after concluding that Higgs was unable to satisfy the savings clause in 28 U.S.C. § 2255(e) and therefore unable to pursue habeas corpus relief under § 2241. We agree. Because there is nothing structurally inadequate or ineffective about using § 2255 to bring a *Davis*-based claim, Higgs cannot seek relief under § 2241.

## I

### A

In January 1996 Dustin Higgs, Willie Mark Haynes, and Victor Gloria drove from Laurel, Maryland to Washington, D.C. to pick up Tanji Jackson, Tamika Black, and Mishann Chinn. Back at Higgs's apartment, he and Jackson began arguing in the early morning hours. Jackson, Black, and Chinn then walked out. Infuriated that Jackson seemed to write down his license plate number on her way out, Higgs grabbed his gun and together with Haynes and Gloria decided to go after the three women. Upon catching up with them, Haynes lured Jackson, Black, and Chinn into Higgs's van, apparently promising them a ride home. But instead Higgs drove them to the Patuxent National Wildlife Refuge in Maryland, federal land under the jurisdiction of the U.S. Park Police. Upon finding a secluded location and directing the women out of the van, Higgs handed his gun to Haynes, who then shot and killed Jackson, Black, and Chinn.

No. 20-2129                                                    3

A federal grand jury in the District of Maryland indicted Higgs and Haynes for three counts of each of the following: first-degree premeditated murder (18 U.S.C. § 1111(a)), first-degree murder committed in the perpetration of kidnapping (18 U.S.C. § 1111(a)), kidnapping resulting in death (18 U.S.C. § 1201(a)), and using a firearm in the commission of a crime of violence (18 U.S.C. § 924(c)).

The district court severed the cases for trial. Haynes, the triggerman, was tried and convicted first. During the penalty phase of Haynes's trial, the jury failed to reach a unanimous verdict on the death sentences, so the district court imposed concurrent life sentences for the murder and kidnapping convictions and a 45-year consecutive sentence for the § 924(c) offenses.

Higgs's trial came next. A jury returned a guilty verdict on all counts and recommended a death sentence for each of the murder and kidnapping counts pursuant to the Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591–3598. The district court agreed with the recommendation and imposed nine death sentences, while also sentencing Higgs to 45 consecutive years for the three § 924(c) convictions. The Fourth Circuit affirmed on all fronts.

B

For nearly the past twenty years, Higgs has pursued post-conviction relief in the District of Maryland and the Fourth Circuit. None of his efforts have succeeded, though. See, *e.g.*, *United States v. Higgs*, 663 F.3d 726 (4th Cir. 2011); *United States v. Higgs*, 95 F. App'x 37 (4th Cir. 2004). In 2016 Higgs asked the Fourth Circuit for permission to file a new § 2255 motion to challenge his § 924(c) convictions based on the Supreme

4                                                                    No. 20-2129

Court's decision a year earlier in *Johnson v. United States*, 576 U.S. 591 (2015). The Court in *Johnson* held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. See *id.* at 596–97. The Fourth Circuit summarily denied Higgs's request.

Unable to secure relief in the circuit of his conviction, in 2016 Higgs turned to the Southern District of Indiana—the district of his confinement—for relief. He invoked 28 U.S.C. § 2241 and sought a writ of habeas corpus on the basis of *Johnson*. Higgs was not just seeking relief from his § 924(c) convictions. His strategy was broader and focused ultimately on vacating his death sentences. Higgs contended that relief in the first instance from his allegedly invalid § 924(c) convictions would call the entirety of his sentence into question, leading to an altogether new sentencing proceeding, at which he could seek to avoid capital punishment.

The district court stayed Higgs's § 2241 proceedings pending the Supreme Court's decision in *United States v. Davis*. The Supreme Court decided *Davis* in 2019, holding that § 924(c)(3)(B), the residual clause in the definition of "crime of violence," is unconstitutionally vague. 139 S. Ct. 2319, 2336 (2019).

While the § 2241 proceeding was stayed in the Southern District of Indiana, Higgs submitted a renewed application in the Fourth Circuit seeking authorization to file another § 2255 motion. Here, too, he contended that *Davis* announced a new rule of constitutional law that applied to his § 924(c) convictions. The Fourth Circuit again denied Higgs's request in a summary order unaccompanied by a statement of reasons.

No. 20-2129                                                                    5

## C

Back in the Southern District of Indiana, the district court lifted the stay and, after receiving supplemental briefing addressing *Davis*'s impact on Higgs's claim, denied the § 2241 petition. A federal prisoner may seek relief under § 2241 when "the remedy by [a § 2255] motion is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). As the district court explained, our precedent has interpreted the savings clause in § 2255(e) and identified a handful of situations in which § 2255 provides an inadequate or ineffective remedy. One of those circumstances includes a claim alleging a miscarriage of justice based on a new rule of statutory interpretation announced by the Supreme Court. See *In re Davenport*, 147 F.3d 605, 610 (7th Cir. 1998).

Higgs contended that his claim fit within the *Davenport* exception because, even though *Davis* announced a constitutional holding, the case also entailed substantial conclusions of statutory interpretation about the meaning of § 924(c)(3)(B). The district court, however, was unwilling to deviate from the consensus of other circuits that have uniformly held that *Davis* announced a new rule of constitutional law made retroactive to cases on collateral review, thereby opening the door to a second or successive motion under § 2255(h)(2). The court emphasized that it had "no reason to believe that the Fourth Circuit will break with every other circuit" on this issue and "assume[d] that successive § 2255 motions will be available in the Fourth Circuit for federal prisoners relying on *Davis*." Concluding that *Davis* was a constitutional case, the district court held that the *Davenport* exception did not apply to Higgs's claim and denied his § 2241 petition as barred by the savings clause in § 2255(e).

6                                                          No. 20-2129

Higgs now appeals. While this appeal was pending, the government scheduled his execution for January 15, 2021.

## II

The legal question before us is whether Higgs can use the general federal habeas corpus statute, 28 U.S.C. § 2241, to challenge his § 924(c) convictions under *Davis.* We can only reach the merits of Higgs's *Davis* challenge if we answer that question in his favor.

## A

For federal prisoners like Higgs, 28 U.S.C. § 2255 serves as the default statute for pursuing postconviction remedies. "Strict procedures govern" the process by which a prisoner may file a § 2255 motion. *Purkey v. United States*, 964 F.3d 603, 611 (7th Cir. 2020). A federal prisoner, for example, is limited to filing only one motion under § 2255 unless he receives permission to file a second or successive motion from the appropriate court of appeals. See 28 U.S.C. § 2255(h). Permission to file another § 2255 motion can come in only two narrow situations when: (1) newly discovered evidence, if proven, would be sufficient to establish innocence, or (2) there is a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court. See *id.* In § 2255(e), however, Congress also included a narrow pathway—commonly called the savings clause—for prisoners to seek relief through § 2241.

The savings clause is front and center in Higgs's appeal. It provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall

No. 20-2129                                                              7

> not be entertained if it appears that the appli-
> cant has failed to apply for relief, by motion, to
> the court which sentenced him, or that such
> court has denied him relief, unless it also ap-
> pears that the remedy by motion is *inadequate* or
> *ineffective* to test the legality of his detention.

*Id.* § 2255(e) (emphasis added). We have held that an avenue for postconviction relief may be "inadequate" or "ineffective" when "so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *Davenport*, 147 F.3d at 611.

In *Purkey*, we canvassed three scenarios from prior cases illustrating the inadequacy or ineffectiveness of the relief otherwise available through § 2255. See 964 F.3d at 611–13 (citing and discussing *Davenport*, 147 F.3d 605 (involving a claim alleging a miscarriage of justice and based upon a new rule of statutory interpretation made retroactive by the Supreme Court); *Garza v. Lappin*, 253 F.3d 918 (7th Cir. 2001) (involving a claim based on the ruling of an international tribunal issued after the prisoner's first round of § 2255 relief); and *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) (en banc) (involving a claim that relied on new evidence that existed but was allegedly unavailable at trial, where the new evidence could show that the petitioner is categorically ineligible for the death penalty under the Eighth Amendment)).

As we explained in *Purkey* and reiterate today, our decisions in *Davenport*, *Garza*, and *Webster* do not "create rigid categories delineating when the [savings clause] is available." 964 F.3d at 614. Such a conclusion "would be inconsistent with the standard-based language of section 2255(e)." *Id.* at

8                                                                    No. 20-2129

614–15. To be sure, we took care in *Purkey* to emphasize that the terms "inadequate" and "ineffective" (as used in § 2255(e)'s savings clause) must mean something more than the mere lack of success. *Id.* at 615. Instead, "there must be some kind of *structural* problem with section 2255 before section 2241 becomes available." *Webster*, 784 F.3d at 1136 (emphasis added).

With this legal framework in mind, we turn to what all of this means for Dustin Higgs.

## B

Higgs filed his § 2241 petition in the Southern District of Indiana seeking to challenge his § 924(c) convictions under the *Johnson-Davis* line of cases. Unfortunately for Higgs, however, his *Davis* challenge to his firearm convictions is not cognizable under § 2241. We reached this same conclusion on analogous facts less than two months ago in the capital case of Orlando Hall. See *Hall v. Watson*, 829 F. App'x 719 (7th Cir. 2020).

Higgs cannot meet the savings-clause standards most applicable to his circumstances—the ones established in *Davenport*. For the *Davenport* exception to apply, the petitioner must "rel[y] on 'not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a [§ 2255(h)(2)] motion.'" *Montana v. Cross*, 829 F.3d 775, 783 (7th Cir. 2016) (second alteration in original) (quoting *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)).

Higgs concedes, as he must, that *Davis* is at least in part a rule of constitutional law, but he emphasizes that the bulk of *Davis*'s analysis focuses on the statutory interpretation of § 924(c)(3)(B). See, *e.g.*, *Davis*, 139 S. Ct. at 2327 ("So, while the

consequences in this case may be of constitutional dimension, the real question before us turns out to be one of pure statutory interpretation.").

No doubt *Davis* includes much discussion regarding the meaning of § 924(c)(3)(B). At bottom, though, *Davis* announced a constitutional decision. The Supreme Court said as much, expressly "agree[ing] with the court of appeals' conclusion that § 924(c)(3)(B) is unconstitutionally vague." *Id.* at 2336. Because *Davis* is a constitutional case, we cannot say there is anything structurally "inadequate" or "ineffective" about § 2255 as a remedy for petitioners like Higgs challenging their § 924(c) convictions under *Davis*. Put another way, nothing about § 2255, including the limitations it imposes on second or successive motions, prevented Higgs from pursuing relief based on *Davis*'s constitutional holding.

Recall that Higgs did just that when he sought permission from the Fourth Circuit to file a new *Davis*-based § 2255 motion. That Higgs did not succeed with this request in the Fourth Circuit does not itself show that § 2255 was inadequate or ineffective. And because the savings clause does not apply to Higgs, the district court was right to conclude that his *Davis*-based claim is not cognizable under § 2241. See *Hall*, 829 F. App'x at 720 (reaching the same conclusion).

In so concluding, we do not adopt the theory the government advanced at oral argument that Supreme Court cases in the savings-clause context can never be "bilateral"—meaning *both* constitutionally and statutorily based. To the government, a case is either constitutional or it is not. We decline to adopt this bright-line approach, for court decisions can entail substantial nuance and often are not so binary. It is

conceivable that a case could rest on a few grounds, including both statutory and constitutional bases.

Here, though, we agree that *Davis* is best and most fairly read as only a constitutional case for purposes of interpreting the limitations of a second or successive § 2255 motion. So Higgs cannot proceed under the savings clause.

### III

We close with a couple of observations in response to the parties' competing speculations that seek to explain the Fourth Circuit's summary order denying Higgs's application to file a new § 2255 motion. We do not know, and should not speculate about, the reasons supporting the Fourth Circuit's decision. Higgs urges us to conclude that our sister circuit's order reveals a structural deficiency, thereby enabling him to pursue § 2241 relief through the savings clause. In his view, the fact that the Fourth Circuit did not explain its decision—combined with the statutory prohibition on appellate review of the denial of his application, see 28 U.S.C. § 2244(b)(3)(E)—creates a structural problem preventing him from seeking a remedy under § 2255. Absent this alleged deficiency, Higgs sees himself as being able to pursue *Davis*-based relief in a new § 2255 motion.

We see the analysis in a different way. Higgs has not shown that the denial of his application to file a new § 2255 motion was somehow legally indefensible or the product of some irregularity in the judicial decision-making process. Difficult though such a showing may be for a federal or state prisoner, we do not rule it out in some future case presenting extraordinary circumstances. All we need to say today, though, is that we are confident Higgs has not presented such a case.

No. 20-2129                                                                                      11

One final point warrants underscoring. What Higgs understandably emphasized on appeal, aided as he was by a team of very able counsel, was the disparity between his circumstances (facing death sentences and an impending execution date) and those of his co-defendant, Willie Haynes (the triggerman who received life sentences and permission to file a successive § 2255 motion to challenge his § 924(c) convictions). The reasons for Higgs being prevented but Haynes being allowed to file a new § 2255 motion are not plain to us. Regardless, in the circumstances before us, the disparity alone does not establish the inadequacy or ineffectiveness of § 2255 as a remedy.

For these reasons, we AFFIRM.